UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

vs.  Case Nos.:  3:17cr86/MCR/MAL
             3:21cv779/MCR/MAL

WALI EBBIN RASHEE ROSS
    Defendant.

## **REPORT AND RECOMMENDATION**

This matter is before the court upon Defendant Wali Ebbin Rashee Ross's "Motion to Vacate, Correct or Set Aside Pursuant to Title 28 U.S.C. § 2255" and supplement thereto. ECF No. 101, 107.[1] After careful consideration of the motion, the record, the relevant law, the Government's response (ECF No. 103), and Ross's reply (ECF No. 105), I recommend the § 2255 motion be denied without an evidentiary hearing.

### I.    BACKGROUND

On August 15, 2017, a federal grand jury charged Ross with knowingly possessing a firearm and ammunition as a convicted felon in violation of 18 U.S.C.

---

[1] The case was referred to me for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).

§§ 922(g)(1) and 924(a)(2). ECF No. 11. The indictment listed 4 prior felonies. A superseding indictment dated September 19, 2017, added a second count, charging Ross with possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(1) and 841(b)(1)(C). On January 22, 2021, the Government filed a notice of its intent to seek enhanced penalties in this case due to Ross's prior drug convictions. ECF No. 21.

According to the facts set forth in the Presentence Investigation Report (PSR),[2] and the Eleventh Circuit's opinion, Ross, who had a history of violence and drug crimes, was identified as a target for a fugitive roundup due to his failure to appear in state court on several charges. ECF No. 54, PSR ¶ 14. On July 21, 2017, law enforcement received information that he was staying at a motel in Pensacola, although Ross had not checked into the motel in his name. PSR ¶ 15; ECF No. 92 at 4. Surveillance officers eventually observed Ross leave Room 113 and approach a vehicle before he turned around and returned to the room as if he had forgotten

---

[2] The facts as set forth herein are undisputed. *See, e.g., United States v. Beckles*, 565 F.3d 832, 844 (11th Cir.2009) ("Facts contained in a PSI are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court with specificity and clarity." (internal quotation marks omitted)); *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir.2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes.").

something. ECF No. 92 at 4. After he left the room and headed towards his vehicle a second time, the United States Marshal's Service attempted to serve an arrest warrant. Ross, however, fled on foot, climbing a chain-link fence and running north across a six-lane interstate highway. PSR ¶16; ECF No. 92 at 4.

Law enforcement realized, after Ross evaded them, that none of the officers had stayed behind at the motel during the chase, and therefore it was possible Ross could have returned to the motel unnoticed. ECF No. 92 at 4. They proceeded to the motel, where they observed the door to Room 113 was closed and Ross's vehicle remained in the parking lot. *Id.* at 5. They obtained a key for the room that had been rented by Donicia Wilson. Officers later learned Wilson and her husband rented the room for Ross after refusing his request to spend the night at their home because they had children, and they did not know him very well. *Id.* at 5.

Not knowing whether Ross had indeed returned, officers made a tactical entry into the room and conducted a quick protective sweep. ECF No. 92 at 5. Ross was not inside, but an agent observed a plastic grocery bag with what he perceived as a clear outline of a pistol in plain view. PSR ¶ 17; ECF No. 92 at 5. Law enforcement seized what turned out to be a loaded 9mm handgun, but they touched nothing else before leaving. PSR ¶ 18; ECF No. 92 at 5.

Thereafter, motel management advised officers they could search the room after the motel's standard 11:00 a.m. checkout time. ECF No. 92 at 6. In the interim, the manager stood in the doorway of the room to ensure no one entered. *Id.* Normal policy was for the motel to inventory and store any items left behind in the rooms, and to notify law enforcement if any weapons or contraband were present. *Id.* ATF agents again obtained the motel manager's permission to enter the room at 11:00 a.m., and the search recovered narcotics and drug paraphernalia including 1 gram of cocaine, 13 grams of heroin, 3.5 grams of methamphetamine and 6.4 grams of marijuana.[3] PSR ¶ 20; ECF No. 92 at 6. DNA testing on the firearm revealed Ross's "DNA was found to match the partial major contributor at a frequency of occurrence of 1 in 190 billion for unrelated individuals." *See* ECF No. 40 at 1.[4] The instant charges followed.

On October 10, 2017, Assistant Federal Public Defender Thomas Keith filed a motion to suppress all evidence seized during the protective sweep and subsequent warrantless search of the hotel room. ECF No. 24. The district court held a hearing

---

[3] All weights are approximate. PSR ¶20.

[4] Although Ross signed the Factual Basis for the Guilty Plea where the DNA testing was mentioned, he now claims "Partial mixed DNA material is not a foundation for identification." ECF No. 105 at 1.

on Ross's motion on October 30, 2017. The court took the motion under advisement and issued a written order denying the motion on November 7, 2017. ECF No. 34.

On November 28, 2017, Ross pleaded guilty to both counts of the indictment before then-Magistrate Judge Elizabeth Timothy, reserving his right to appeal the court's order denying the motion to suppress. ECF Nos. 38-43, 48. During the thorough colloquy, the court advised Ross that by entering a guilty plea he would be giving up the right to present any defense and he would essentially be telling the court he was guilty and, he did what he was charged with doing. ECF No. 48 at 8. Ross affirmed he understood. He also stated he understood if the court accepted his guilty plea, he could not change his mind later and withdraw it. *Id.* at 9. Ross assured the court he had discussed the case fully with counsel and he was satisfied with the representation counsel had provided. *Id.* He further assured the court he had read the Factual Basis and the facts contained therein were true and correct, *Id.* at 11, and he had read and understood the penalties set forth in the Plea Agreement. *Id.* at 13-15. The district court adopted the recommendation that the plea be accepted on November 29, 2017. ECF Nos. 42, 43.

On December 6, 2017, the Clerk received Ross's letter dated December 2, 2017, asking that he be permitted to withdraw his guilty plea on Count 2 of the

indictment, a request he apparently had also made of Mr. Keith. *See* ECF Nos. 46, 47. After the Government responded in opposition to the motion, Ross filed a motion to dismiss his motion to withdraw his guilty plea to count two of the indictment. ECF Nos. 49, 50. The district court granted the motion to dismiss and denied the request to withdraw his guilty plea as moot. ECF No. 51. Significantly, in his motion to withdraw his plea, Ross complained about being under anesthesia[5] and wanting only to enter a plea to count one. ECF No. 46. He did not raise any of the complaints he now makes in his § 2255 motion.

According to Ross's Presentence Investigation Report (PSR), as a career offender who received full credit for acceptance of responsibility, his total offense level was 29. ECF No. 54, PSR ¶¶ 36-39. At sentencing, the court determined the correct total offense level was 31 due to his greater sentencing exposure and thus a higher career offender offense level. ECF No. 79 at 3-4. Because of Ross's career offender status, his criminal history category, which otherwise would have been III, became VI. ECF No. 54, PSR ¶¶ 70-72.

---

[5] Ross stated under oath at his change of plea hearing that he had a tooth pulled and was taking Tylenol 3. ECF 48 at 6-7. He represented that his head was clear and that he understood the proceedings. *Id.*

The applicable advisory guidelines range was 188 to 235 months' imprisonment. ECF No. 60 at ¶ VIII. The court sentenced Ross below that range to a term of 120 months' imprisonment on Count 1 and a concurrent term of 151 months' imprisonment on Count 2. ECF Nos. 59, 79. In deciding to depart, the court relied on the facts that (1) the career offender qualifying offenses were not crimes of violence, and (2) Ross had limited violent history. ECF No. 60 at ¶ VIII.

Ross appealed the denial of the motion to suppress, and the Eleventh Circuit ultimately affirmed in a published opinion dated July 7, 2020. ECF No. 92. Ross filed a petition for writ of certiorari to the Supreme Court, which was denied on February 22, 2021. ECF No. 98.

## II. DISCUSSION

Ross raises a single ground for relief in his § 2255 motion. He claims counsel was ineffective because he became "obsessed with a constitutional fourth amendment argument and ignored evidence that changed the facts alleged." ECF No. 101 at 3. In his motion, despite admitting that Mr. Keith's arguments in the motion to suppress were "excellent," the appeal was "more than competent," and the petition for certiorari "was insightful and on point," he claims Mr. Keith should have

raised a factually based defense and was constitutionally ineffective for failing to do so. *Id.* at 14, 15.

As the basis for his claim, Ross now asserts he did not have possession of the contents of the motel room, having effectively abandoned them when he fled, and that Mr. Keith should have used this information during plea negotiations or at trial. ECF No. 101 at 12. Ross states after he fled from authorities, he phoned Donicia Wilson and her husband, who, he claims, had been with him in the motel room and were still on the premises, presumably suggesting they had some responsibility for the items seized. *Id.* at 11. He also offers speculation about the room possibly having been opened by "numerous employees, former guest who copy the key and average lock pickers" during the approximately ten minutes between his flight and law enforcement's return. *Id.* Because of this, Ross claims he had a viable defense of "third party" or "abandonment" that Mr. Keith did not pursue or make use of as a negotiating tool, and as such his representation was constitutionally ineffective. *Id.* at 13.

"A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant." *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) (citations omitted).

This waiver includes constitutional claims, including ineffective assistance of counsel claims relating to pre-plea issues, although an attack on the voluntary and knowing nature of the plea can be sustained. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (individual who pleads guilty may "attack the voluntary and intelligent character of the guilty plea").

In admitting his guilt, Ross waived his contention that counsel was constitutionally ineffective for failing to pursue other theories of guilt/ownership of the items recovered from Room 113. As set forth above, the magistrate judge conducted a thorough plea colloquy during which she ensured the knowing and voluntary nature of Ross's plea, as well as Ross's satisfaction with the representation Mr. Keith provided. He also acknowledged he understood by pleading guilty he was giving up any defenses he may have. ECF No. 48 at 8-9. Ross has offered nothing to suggest a defect in these proceedings.

A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (citing *Blackledge*). This is because solemn declarations made under oath in open court

carry a strong presumption of verity. *Blackledge*, 431 U.S. at 73–74; *Winthrop-Redin,* 767 F. 3d at 1216. They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice. *Blackledge*, 431 U.S. at 73–74; *Winthrop-Redin*, 767 F.3d at 1216. In fact, such allegations are subject to summary dismissal. *Winthrop-Redin*, 767 F.3d at 1216 (citing *Blackledge*, 431 U.S. at 74). A defendant "bears a heavy burden to show his statements [under oath] were false." *Winthrop-Redin,* 767 F.3d at 1217 (quoting *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)). "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stitzer*, 785 F.2d 1506, 1514, n.4 (11th Cir. 1986) (quoting *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975)). Again, Ross has offered no basis for the Court to disregard his sworn statements. His bare, conclusory, after the fact assertions that additional investigation into Donicia Wilson and her husband *might have* uncovered exculpatory evidence do not afford him relief. This is particularly true after he not only admitted his guilt under oath at the rearraignment proceeding, but also he has

not denied possessing either the gun or the drugs in this proceeding, instead appearing to try to shift the blame due to his abandonment.

Even if Ross had not waived his claim due to his guilty plea, he cannot show he is entitled to relief. To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his attorney's representation fell below "an objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant "bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Dale v. United States*, 809 F. App'x 727, 728 (11th Cir. 2020). Ross cannot show a violation of *Strickland*.

First, Mr. Keith's affidavit, submitted in conjunction with the Government's response, contradicts Ross's allegations. ECF No. 103-1. Mr. Keith avers there was no evidence to support an argument that anyone other than Ross had been in Room 113 before Ross fled or that anyone other than Ross had brought the firearm and

drugs into the room. *Id.* at 1. According to Mr. Keith, Ross never told him anyone else had been in the room. *Id.* Nonetheless, Mr. Keith's investigator interviewed both Mrs. Wilson and her husband, Marcus Riley. *Id.* Neither Wilson nor Riley stated she or he had been in the motel room Wilson rented for Ross, which was consistent with what the couple had previously told ATF officers. *Id.* at 1, 4. Counsel further notes that Ross's purported "abandonment" of the motel room would not have been relevant to his guilt or innocence because the charges were based on his alleged possession of the firearm and drugs before fleeing. *Id.* at 2, n.1.

Ross's argument, made for the first time in his reply, that counsel should have secured a video showing the interaction between Mrs. Wilson and the motel desk clerk likewise does not entitle him to relief. He has not explained how this video could be relevant to the question of his guilt of the charged offenses. Similarly, his speculation that a *Brady* violation occurred because the Government did not turn over the video, in addition to counsel failing to request it, affords no relief.

Finally, Ross's suggestion that counsel could have used the speculation he now offers to secure a more favorable plea agreement is misguided.[6] Mr. Keith

---

[6] Ross's suggestion counsel could have obtained a favorable outcome at trial is wholly unsupported. Ross has never indicated he would have proceeded to trial but for counsel's alleged investigatory deficiencies. *See Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (a defendant who claims that ineffective assistance of counsel led him to improvidently plead guilty will be required to

states in his affidavit that, as this Court knows is frequently the case, the Government was unwilling to dismiss any of the counts of the indictment and it would not agree to a certain sentence if Ross pleaded guilty. ECF No. 103-1 at 2. If Ross believed he had a defense to the charges, or even just means to sow reasonable doubt in a jury's mind, the only way to challenge the Government's case would have been to proceed to trial. Instead, he decided after ample consultation with counsel that it was in his best interest to enter the guilty plea. *Id.* He in fact benefited from the decision to plead guilty by receiving a 3-point reduction to his offense level for acceptance of responsibility.

## III.   CONCLUSION

An evidentiary hearing is not necessary to resolve Ross's claim because "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015). Ross waived any defenses through his guilty plea, and even if he had not, he has not shown counsel was constitutionally ineffective. His motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 should be denied.

---

show that but for counsel's errors, he would not have pled guilty and would have instead insisted on proceeding to trial). Furthermore, as discussed herein, his suggestions that someone else could have been responsible for the items he admitted possessing is baseless.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.   The motion to vacate, set aside, or correct sentence (ECF No. 101), as supplemented (ECF No. 107) be **DENIED**.

2.   A certificate of appealability be **DENIED**.

At Gainesville Florida on December 20, 2023.

                          s/ *Midori A. Lowry*
                          Midori A. Lowry
                          United States Magistrate Judge

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.